# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JULIAN VASQUEZ GARCIA; NICOLAS JIATAZ PATZAN; ALFREDO VASQUEZ,

Petitioners,

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; TODD LYONS, Acting Director, Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, Director, San Diego Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; JEREMY CASEY, Warden, Imperial Regional Detention Facility; IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No.: 25-cv-02180-DMS-MMP

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

Pending before the Court is Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("Application"), (Ex Parte Appl. ("Appl."), ECF No. 2). Respondents filed an Opposition, (Opp'n, ECF No. 5), and Petitioners filed a Reply (Reply, ECF No. 6). For the following reasons, Petitioners' Application is granted in part and denied in part.

## I.     BACKGROUND

Petitioner Julian Vasquez Garcia, an alleged noncitizen, entered the United States on an unknown date. (Opp'n at 4). He was residing in Colton, California when, on July 9, 2025, Immigration and Customs Enforcement ("ICE") agents arrested him. (Appl. at 2). Petitioner Nicolas Jiataz Patzan, an alleged noncitizen, entered the United States in 2002, (Opp'n at 4), and has since resided in the country, (Appl. at 3). ICE agents arrested him on June 12, 2025. (*Id.*). Petitioner Alfredo Vasquez, an alleged noncitizen, entered the United States in 2021. (Opp'n at 4). ICE agents arrested him on June 22, 2025. (Appl. at 4).

ICE charged each Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as being present in the United States without being admitted or paroled. (*Id.* at 3–4, Exs. A, D, G). Petitioner Alfredo Vasquez is also being charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid entry document. (*Id.* at 4, Ex. G); (Opp'n at 5). ICE placed Petitioners in removal proceedings pursuant to 8 U.S.C. § 1229a. (Appl. at 3–4).

Immigration judges ("IJs") then denied each Petitioner's request for a bond hearing, finding that Petitioners were "applicants for admission" and, therefore, subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*Id.* at 3–4, Exs. C, E, H); (Opp'n at 4–5). Petitioners allege that the IJs' findings are based on a new Department of Homeland Security ("DHS") and Department of Justice ("DOJ") policy, issued on July 8, 2025, requiring all "applicants for admission" (meaning, "alien[s] present in the United States who [have] not been admitted or who arrive[] in the United States, whether or not at a designated port of arrival") to be mandatorily detained during removal proceedings

pursuant to § 1225(b)(2).  (Appl. at 8, Ex. J).  Petitioners argue that this reported policy sets forth a "new legal interpretation [of § 1225(b)(2)]" that is "plainly contrary to the statutory framework and contrary to decades of agency practice[.]" (*Id.* at 2).  Petitioners claim that they should not be mandatorily detained under § 1225(b)(2), but rather granted bond hearings pursuant to § 1226(a).  (*Id.*).  Accordingly, Petitioners ultimately argue that the new reported policy and the "resulting ongoing detention of Petitioners without a bond hearing is depriving Petitioners of statutory and constitutional rights[.]" (*Id.*).  Petitioners have not appealed the bond denial orders to the Board of Immigration Appeals ("BIA").  (Opp'n at 4–5).  Petitioners are currently detained at the Imperial Regional Detention Facility in Calexico, California.  (Appl. at 3–4).

Following the bond hearing denials, Petitioners filed a petition for a writ of habeas corpus with the Court, making the following claims for relief: (1) Petitioners' Detention is in Violation of 8 U.S.C. § 1226(a); (2) Petitioners' Detention Violates the Administrative Procedure Act, 5 U.S.C. § 706(2); and (3) Petitioners' Detention Violates Their Fifth Amendment Right to Due Process.  (Pet., ECF No. 1, at 16–18).  Alongside their petition, Petitioners filed an Application for a temporary restraining order ("TRO"), pending here, seeking to "release [Petitioners] from custody," or alternatively, "provide [each Petitioner] with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a)[.]"[1]  (Appl. at 1).

## II.   LEGAL STANDARD

The legal standard for issuing a TRO is the essentially identical to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

---

[1]  Petitioners also seek a TRO "prohibiting Respondents from relocating Petitioners outside of the [Southern] District [of California] pending final resolution of this litigation."  (Appl. at 2).  Respondents state that "ICE has agreed that Petitioners will not be moved out of the Southern District of California during the pendency of this matter."  (Opp'n at 1 n.1).  The Court therefore deems this request unopposed, and **GRANTS** the injunctive relief without further discussion.

240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1142 (S.D. Cal. 2021).

"A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party "must make a showing on *all four prongs* to obtain a preliminary injunction." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citation modified).

Under the Ninth Circuit's "serious questions" test, "a 'sliding scale' variant of the *Winter* test," a party is "entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the [petitioner],' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217). "[I]f a [petitioner] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the [petitioner's] favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). A petitioner need only demonstrate success as to at least one of his claims to receive an injunction. *See Ozkay v. Equity Wave Lending, Inc.*, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the application." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal.

2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting a preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

Injunctive relief can be prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (citation modified) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction orders a responsible party to take action[,] . . . goes well beyond simply maintaining the status quo pendente lite[,] and is particularly disfavored." *Id.* at 879 (citation modified). The "status quo" refers to the "last, uncontested status" between the parties before the controversy arose. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). Mandatory injunctions are subject to heightened scrutiny whereas prohibitory injunctions are evaluated under the traditional *Winter* test. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).

### III. DISCUSSION

#### A. Proper Habeas Petition?

The Court first addresses Respondents' contention that Petitioners brought improper habeas claims. Specifically, Respondents argue that Petitioners "are not challenging the lawfulness of their custody[;] [r]ather, they are challenging the type of review they receive

related to bond hearings." (Opp'n at 5). However, Petitioners, indeed, "challeng[e] the lawfulness of their detention pursuant to § 1225(b)(2)." (Reply at 8). Petitioners brought a proper habeas corpus petition.

### B. Jurisdiction

The Court next considers whether it has authority to hear this case. Respondents argue that the Court lacks jurisdiction per 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). (Opp'n at 6–10). Each statute is addressed in turn.

#### 1. Section 1252(b)(9)

Under § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that this jurisdictional limit includes "decisions to detain for purposes of removal or for proceedings." (Opp'n at 9 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (plurality opinion) ("[Respondents] *are not challenging the decision to detain them in the first place or to seek removal . . . .* [therefore,] § 1252(b)(9) does not present a jurisdictional bar." (emphasis added)))). Petitioners argue that the *Jennings* court, before examining the merits of a statutory interpretation question about § 1225 and § 1226, held that the detention at issue did not "'aris[e] from' the actions taken to remove" the noncitizen class members, and thus, § 1252(b)(9) did not apply. (Reply at 5 (citing *Jennings*, 583 U.S. at 293)).

Admittedly, the case law surrounding § 1252(b)(9) is "'notoriously complicated,'" "confusing," and "piecemeal," Adam J. Garnick, *Noncitizens' Access to Federal District Courts: The Narrowing on § 1252(b)(9) Post*-Jennings, 169 U. Pa. L. Rev. 783, 807 (2021) (citing *Singh v. Gonzales*, 499 F.3d 969, 980 (9th Cir. 2007)), as evidenced by both parties using *Jennings* to make opposite arguments. (*See, e.g.*, Opp'n at 9); (Reply at 5). This Court need not, and does not, resolve the parties' staunchly different interpretations of *Jennings*. *Nielsen v. Preap*, 586 U.S. 392 (2019), provides enough clarity to resolve the

present issue. In *Preap*, detainees were denied bond hearings and subjected to mandatory detention pursuant to 8 U.S.C. § 1226(c). *Id.* at 399. The Supreme Court held that § 1252(b)(9) did not bar jurisdiction: "[a]s in *Jennings*, respondents here 'are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal *[as opposed to the decision to deny them bond hearings]*; and they are not even challenging any part of the process by which their removability will be determined.'" *Id.* at 402 (emphasis added). Thus, *Preap* makes clear that decisions to deny bond hearings fall outside the purview of § 1252(b)(9)'s jurisdictional bar.

The Ninth Circuit agrees. "'[Section] 1252(b)(9) has built-in limits,' specifically, 'claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9).'" *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*

Here, Petitioners do not challenge ICE's authority to charge Petitioners or initiate removal proceedings. (*See generally* Pet.); (Appl.). Instead, Petitioners "challenge the new DHS and [DOJ] bond policy and the immigration judge orders considering Petitioners detained under § 1225 rather than § 1226(a)." (Reply at 7). Their detention pursuant to § 1225(b)(2) may be during—but is nonetheless independent of—the removal proceedings. Accordingly, § 1252(b)(9) does not strip this Court of jurisdiction.

2. Section 1252(g)

Section 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that because Petitioners' detentions arise from the government's decision to commence

proceedings against them, there is no jurisdiction. (Opp'n at 7–10). Petitioners argue that they do not challenge a decision to "commence proceedings," but instead "challenge Respondents' conclusion that they are subject to mandatory detention while those proceedings take place." (Reply at 4). The Court agrees with Petitioners.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18. Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998). "[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

Petitioners do not contest the charges brought against them or the initiation of removal proceedings. (*See generally* Appl.). Instead, Petitioners argue that they should be provided a bond hearing in accordance with § 1226(a), to determine their detention status *during* the removal proceedings. (*Id.* at 5–15). Petitioners are enforcing their constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order. Therefore, § 1252(g) does not limit the Court's jurisdiction in the present case.

**C. Exhaustion**

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). The parties agree that exhaustion here is a prudential requirement. (Appl. at 18); (Opp'n at 10–11). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872

F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018)). Respondents argue that Petitioners have failed to exhaust administrative remedies, and therefore, "this matter should be dismissed or stayed." (Opp'n at 10–13). Petitioners argue that several *Laing* factors are met. (Appl. at 18–22). The Court finds the prudential exhaustion requirements are waived because pursuing administrative remedies would be futile.[2]

Petitioners argue that exhausting administrative remedies would be futile because all ICE employees have been directed by DHS' and DOJ's new policy to "consider anyone arrested in the United States and charged with being inadmissible under § 1182(a)(6)(A)(i) to be an 'applicant for admission' under . . . § 1225(b)(2)(A) and therefore be subject to mandatory detention." (*Id.* at 18). Respondents argue that Petitioners have not established that review at the BIA and the Ninth Circuit would be "futile." (Opp'n at 13). The Court disagrees.

Respondents take the position that Petitioners, by being in the United States without admission, are "applicants for admission" and are subject to mandatory detention under § 1225(b)(2). (*See id.* at 15–18). The reported July 8, 2025 policy states that any "applicant for admission" is "subject to detention under [§ 1225(b)] and may not be released from ICE custody . . . . These aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS." (Appl. at 8, Ex. J). Notably, Respondents do not contest the existence and enforcement of the reported July 8, 2025

---

[2] Because Petitioners need to show only one of the *Laing* factors applies, *Aden*, 2019 WL 5802013, at *2, the Court need not, and does not, address the other factors.

policy; do not argue that Petitioners mischaracterized this reported policy; and do not argue that the BIA has authority to or would reverse the IJs' findings that Petitioners must be mandatorily detained under § 1225(b)(2). (*See generally* Opp'n). It therefore seems clear that anyone deemed inadmissible under § 1182(a)(6)(A)(i) (that is, "[a]n alien present in the United States without being admitted or paroled"), will be subjected to mandatory detention under § 1225(b)(2)—the very determination that Petitioners challenge—even after BIA review.

Based on the present record, Petitioners sufficiently showed that exhausting administrative remedies would be futile. As such, prudential exhaustion requirements are waived.

### D. Injunctive Relief Sought

The Court now considers whether Petitioners seek prohibitory or mandatory preliminary injunctive relief.

First, ordering Respondents to release Petitioners would be a prohibitory injunction, because Petitioners seek to preserve the status quo preceding this litigation (being free from federal custody). Requiring the government to hold individualized bond hearings for each Petitioner, however, may be mandatory. One may argue that such an order directs the government to conduct individualized bond hearings it would "not otherwise have held" absent the Court's direction. *See Hernandez*, 872 F.3d at 998–99. On the other hand, the requested TRO may be understood as prohibiting the government from continuing to detain individuals per an unconstitutional interpretation of § 1225(b)(2). *See id.* at 999. "Because the nature of this provision is subject to greater dispute than the first, we assume without deciding that the [injunction] is mandatory." *Id.*

### E. Likelihood of Success / Serious Questions Going to the Merits

Petitioners carry the burden of demonstrating a likelihood of success (or alternatively, showing "serious questions going to the merits"). *See A Woman's Friend Pregnancy Res. Clinic*, 901 F.3d at 1167; *All. for the Wild Rockies*, 865 F.3d at 1135. However, Petitioners are not required to prove their case in full at this stage—only such

portions that enable them to obtain the injunctive relief they seek. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Petitioners argue, as the basis for their three claims for relief, that they are unlawfully detained under § 1225(b)(2)'s mandatory detention authority and should instead be provided a bond hearing under § 1226(a). (Appl.). Petitioners also argue that the purported July 8, 2025 policy improperly interprets § 1225 "contrary to the statutory framework and contrary to decades of agency practice." (*Id.* at 2). It is worth noting that Respondents do not argue that the reported policy properly interprets § 1225(a)(1) (defining an "applicant for admission") or § 1225(b)(2) (determining which applicants for admission are subjected to mandatory detention). (*See generally* Opp'n). In fact, Respondents do not acknowledge the purported policy at all. (*See generally id.*). Instead, it appears Respondents argue that—independent of any agency guidance or policy—Petitioners, as inadmissible noncitizens, are applicants for admission under § 1225 and are properly detained under § 1225(b)(2). (*Id.* at 14–18).

### 1. Whether Section 1226(a) Includes "Inadmissible" Noncitizens

Section 1226(a) applies to an alien who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioners argue that this language "explicitly" confirms that the statute includes noncitizens who are inadmissible pursuant to § 1182(a). (Appl. at 5). Petitioners also argue that § 1226(c), especially as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), implicitly proves that § 1226(a) includes inadmissible noncitizens. (*Id.* at 6–8). Section 1226(c) carves out exceptions to § 1226(a), requiring certain people be subject to mandatory detention. 8 U.S.C. § 1226(c). Specifically, § 1226(c)(1)(E) (enacted by the Laken Riley Act) requires mandatory detention for people who are (1) inadmissible under § 1182(a)(6)(A), (6)(C), or (7); *and* (2) charged with certain crimes not relevant here. *Id.* § 1226(c)(1)(E). Petitioners argue that, because § 1226(c)(1)(E) is an exception to § 1226(a), if a noncitizen met only one of the § 1226(c)(1)(E) requirements (for example, a noncitizen is inadmissible under § 1182(a)(6)(A), but not charged with any of the

qualifying crimes), that noncitizen would be subject to § 1226(a). (Appl. at 6–7). "A plain reading of this exception implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who . . . is present without being admitted or paroled but *has not been* implicated in any crimes as set forth in Section 1226(c). *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025). "This lends strong textual support . . . that 'inadmissible' noncitizens . . . are included within Section 1226." *Id.*

### 2. Whether Section 1225(b)(2) Includes "Inadmissible" Noncitizens

Section 1225(b)(2)(A) provides in part that "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, . . . shall be detained for a proceeding under [§ 1229a]." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." *Id.* § 1225(a)(1). Respondents argue that § 1225(b) applies "because Petitioners are all present in the United States without being admitted." (Opp'n at 15).

Petitioners argue that for § 1225(b)(2) to apply, the "'applicant for admission' must *also* be 'seeking admission,'" which is not present here. (Appl. at 13). Respondents argue this is not necessary. (Opp'n at 15–16). According to Respondents, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." (*Id.* (emphasis in original) (citing *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012))). It appears Respondents contend that an applicant for admission is automatically understood to be "seeking admission" within the meaning of § 1225(b)(2)(A), without needed to affirmatively apply for admission or parole. (*See id.*). The Court takes issue with Respondents' interpretation.

First, assuming any inadmissible noncitizen is "an applicant for admission" who is "seeking admission" (and, therefore, subject to mandatory detention under § 1225(b)(2)), would render the Riley Laken Act "unnecessary." (Appl. at 7). In other words, as a

practical matter, if § 1225(b)(2) already encompassed all inadmissible noncitizens, there would be no need to pass an amendment that required mandatory detention for those who are inadmissible under the same statutes *and* are being charged with specific, violent crimes. It seems apparent that "seeking admission" under § 1225(b)(2) requires something beyond simply being inadmissible under § 1182(a)(6)(A). "[O]nly those who take affirmative acts, like submitting an 'application for admission,' are those who can be said to be 'seeking admission' within § 1225(b)(2)(A)." (Appl. at 10). Such an understanding also ensures the phrase "seeking admission" as used in § 1225(b)(2)(A) is not "meaningless or superfluous." (*Id.* at 9).

Respondents do not argue that Petitioners affirmatively applied for admission. (*See generally* Opp'n). Rather, Respondents argue that Petitioners, as inadmissible noncitizens, qualify as "applicants for admission" "seeking admission" and, therefore, are subject to mandatory under § 1225(b)(2). (*Id.* at 15–16). Not so. Accordingly, the Court finds on the present record that Petitioners showed likely success, or at least raised serious questions going to the merits.

### F. Likelihood of Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioners are "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. "'Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty' that the Fifth Amendment Due Process Clause Protects." (Appl. at 15–16 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))). "The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Moreno Galvez v. Cuccinelli*, 492 F. Supp. 3d 1169, 1181 (W.D. Wash. 2020). "Thus, it follows inexorably from our conclusion that the government's current policies are likely unconstitutional—and thus that [Petitioners] will likely be deprived of their physical liberty unconstitutionally in the absence of the injunction—that [Petitioners]

have also carried their burden as to irreparable harm." *Hernandez*, 872 F.3d at 995. Therefore, the second *Winter* factor favors Petitioners.

### G. Balance of Equities and Public Interest

When the government is a party to a case, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioners' suit is premised on the violation of their Fifth Amendment rights. (Pet. at 17–18). It would not be "'in the public's interest to allow the [government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres*, 695 F.3d at 1002). "The public interest in enforcement of immigration laws, although significant, does not override the public interest in protecting the safeguards of the Constitution." *Domingo-Ros v. Archambeault*, 2025 WL 1425558, at *5 (S.D. Cal. May 18, 2025). Accordingly, the third and fourth factors support injunctive relief. A TRO is warranted under the circumstances.

### H. Scope

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[A]n injunction must be narrowly tailored . . . to remedy only the specific harms shown by [Petitioners], rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)). "Injunctive relief 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *Rodriguez*, 779 F. Supp. 3d at 1263 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021)).

Respondents correctly argue that "receiving a bond hearing would not automatically entitle Petitioners to release from detention." (Opp'n at 5). Indeed, Petitioners acknowledge that § 1226(a) allows for "discretionary detention." (Appl. at 7). There is

then the possibility of detention even after a bonding hearing. As such, the Court finds that the specific harm alleged—that Petitioners are "unlawfully barred from receiving a bond hearing under the proper statute—is remedied by granting [Petitioners'] request for a bond hearing under § 1226(a) and enjoining [Respondents] from denying bond on the basis that [they are] detained under § 1225(b)(2)." *Rodriguez*, 779 F. Supp. 3d at 1263. Considering the findings above, the Court **DENIES** Petitioners' request to be released from custody, but **GRANTS** Petitioners' request to be provided individualized bond hearings pursuant to § 1226(a).

### I. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (citation modified) (quoting *Jorgensen*, 320 F.3d at 919). The Government has not argued that complying with the TRO will be costly. (*See generally* Opp'n). Therefore, the Court **DECLINES** to set bond.

### IV. CONCLUSION

Based on the foregoing, Petitioners' Application for a TRO is: (1) **DENIED** as to Petitioners' request to be released from custody; (2) **GRANTED** as to Petitioners' request to be provided individualized bond hearings pursuant to § 1226(a); and (3) **GRANTED** as to Petitioners' request to remain in the Southern District of California pending final resolution of this litigation. The Court **DECLINES** to set bond.

Respondents must provide Petitioners with individualized bond hearings under § 1226(a) within fourteen days of this Order. Respondents shall not deny Petitioners' bond on the basis that § 1225(b)(2) requires mandatory detention.

**IT IS SO ORDERED**.

Dated: September 3, 2025

Hon. Dana M. Sabraw
United States District Judge